IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Wayside Chapel Evangelical Free Church | § | |
| PLAINTIFFS | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 5:19-CV-1382 |
| | § | San Antonio Division |
| City of Castle Hills and Chairman of the | § | |
| Zoning Commission Joseph Michael Rodriguez | § | |
| DEFENDANTS | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES PLAINTIFF, WAYSIDE CHAPEL EVANGELICAL FREE CHURCH (hereinafter referred to as "Wayside" and/or "Plaintiff"), in the above-styled cause of action, and file this their ORIGINAL COMPLAINT against the CITY OF CASTLE HILLS ("City" and/or "Defendant") and Joseph Michael Rodriguez ("Chairman Rodriguez" and/or "Defendant"), and would show the following, to wit:

## I.
## PARTIES

1.      PLAINTIFF, WAYSIDE CHAPEL EVANGELICAL FREE CHURCH, is a non-profit corporation organized and existing under the laws of the State of Texas with its principal place of business in the City of Castle Hills, Bexar County, Texas.

2.      DEFENDANT, CITY OF CASTLE HILLS, is a Type A General Law Municipality of the State of Texas and is located in Bexar County. Defendant City of Castle Hills may be served with process by serving the City Manager for the City of Castle Hills, Texas, Ryan Rapelye at Castle Hills City Hall at 209 Lemonwood Drive, Castle Hills. Texas 78213.

1

3.      DEFENDANT, JOSEPH MICHAEL RODRIGUEZ, is an individual and a citizen of the State of Texas, may be served with process at 110 S Gardenview, San Antonio, Texas 78213-2403.

## II.
## JURISDICTION

4.      The Court has federal question jurisdiction over the lawsuit because the suit arises due to Defendant's violations of the United States Constitution First and Fourteenth Amendments 42 U.S.C. §1983 and the Religious Land Use and Institutionalized Persons Act of 2000 42 U.S.C. §2000, et seq. and pendent jurisdiction over Plaintiff's state law claims.

## III.
## VENUE

5.      Venue is proper in this district under 28 U.S.C. §1391(e)(1)(A) and 28 U.S.C. §1391(b)(1), because Defendants City of Castle Hills and Joseph Michael Rodriguez reside in this district and under 28 U.S.C. §1391(e)(1)(B) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## IV.
## CONDITIONS PRECEDENT

6.      All conditions precedent have been performed or have occurred.

## V.
## NATURE OF CAUSE OF ACTION

7.      Wayside is a community of Christ followers who actively engage in Christian service and ministry to the local community, the larger San Antonio area, and certain out-of-state areas and foreign countries. Wayside carries out these activities by giving of its time, talents, and resources directly as well as through many para-church ministries and charitable organizations. Wayside's main church campus, classrooms, meeting facilities, and ministerial and administrative

2

offices are located in the City of Castle Hills. Unfortunately, Wayside's services and ministries have been too often burdened and hindered by the City's history of discrimination against and oppression of places of worship. The City has recently denied Wayside the zoning permission needed for the church to use property acquired for its religious programs.

8.     This suit seeks relief from the clear and purposeful deprivation of Wayside's rights as a religious assembly. In this action Plaintiff alleges that Defendant's zoning laws violate the United States Constitution and the federal Religious Land Use and Institutionalized Persons Act of 2000 42 U.S.C. §2000, et seq. ("RLUIPA"), and the Texas Religious Freedom Restoration Act, Tex. Civ. Prac. & Rem. Code §110.001 et seq. (the "Texas RFRA"), by discriminating against places of worship, and by depriving Wayside of the ability to fairly and adequately secure an adequate place to assemble for its religious worship and other religious activities. Plaintiff seeks injunctive, declaratory and compensatory relief under RLUIPA, 42 U.S.C. § 1983, the Texas Constitution and the Texas RFRA for injuries suffered as a result of Defendant's unlawful conduct. Plaintiff also seeks costs and attorneys' fees under 42 U.S.C. §1988.

9.     Plaintiff further alleges that Defendant, through its officials, wrongfully failed to grant a special use permit for a permitted use of Wayside's property on 113 Ivywood for religious fellowship and education and other church related purposes. Such refusal deprives the Plaintiff of due process and equal protection under the laws. Plaintiff seeks declaratory relief compelling the Defendant to receive, process and grant the special use permit application submitted by Plaintiff.

**VI.**
**STATEMENT OF FACTS**

History of Wayside, its Properties and the City of Castle Hills

3

10.     Wayside has been a part of the City of Castle Hills Community since 1987. During this time it has been a good member of the community and a supportive neighbor. As a matter of fact, Wayside was the only religious entity recognized, among several emergency response organizations, for Wayside's outstanding assistance to the community and its residents following a catastrophic fire at the Wedgewood Senior Living Apartments on December 28, 2014. Further, from 2000 until 2015, Wayside, conscious of the lost property tax revenue for the City, voluntarily paid $450 per month to each the Castle Hills Fire Department and the Castle Hills Police Department.

11.     In 2010, Wayside applied for a Special Use Permit ("SUP") from the City of Castle Hills to use lands it had purchased at 100, 102, 103, 104, 105, 107, 109, 111, 115 and 117 Ivywood Circle (the "Original Properties"), for religious purposes. After some effort in getting the City to acquiesce, the City finally granted the SUP on March 02, 2011 as Ordinance No. 1069. See attached as Exhibit A.

12.     In the fall of 2013, Wayside applied for an amendment to its SUP in order to add Tract-2A, Tract-3A and Tract-4A, and to grade, pave and strip some new parking spaces and to construct grass detention ponds to improve drainage at 100 and 102 Ivywood Circle. The SUP adding the tracts and allowing for the construction was approved by the City as Ordinance No. 1111. See attached as Exhibit B. During this construction, Wayside approached the City, so it would fix drainage problems on the public street Ivywood Circle, which was the City's responsibility. The City refused to pay to fix the problems, and Plaintiff paid to fix them.

13.     On or about February 14, 2019, Plaintiff purchased 113 Ivywood Circle ("113 Ivywood"), a property that is located between two properties already included in Plaintiff's Ordinance No. 1069, across the street from property that is also already included in Ordinance No.

4

1069 and whose backyard backs up to Plaintiff's main campus. See attached map <u>Exhibit C</u>. Plaintiff requires 113 Ivywood as it needs more space for bible study classes and other religious activities. On or about April 03, 2019 Plaintiff filed its application requesting an amendment to its SUP to add 113 Ivywood to its SUP.

Special Use Permit Application Process

14.     All properties, the Original Properties and 113 Ivywood, are located in an "A" single-family district. Churches and schools are permitted uses under this zoning classification. *See City Code §31.401(2).* Under the City's Code of Ordinances, a SUP is required for church or educational purposes in the "A" single-family district. *Id. at §31.401(13).* Section §31.1301 of the City Code sets out the procedure for obtaining a SUP. The SUP procedure is designed to set conditions to ensure the proposed use, "will not adversely affect the character and appropriate use of the area or neighborhood in which it is proposed to locate; will not substantially depreciate the value of adjacent and nearby properties for the use in accordance with the regulations of the zoning district in which they are located will be in keeping with the spirit and intent of [the Castle Hills zoning ordinances]; will not adversely affect the implementation of the Comprehensive Plan; will comply with applicable standards of the district in which located; and will not adversely affect traffic, public health, public utilities, public safety, and general welfare." *Id at §31.1301.* The City used the special use permit procedure to prohibit a permitted use in violation of the Castle Hills City Code to the detriment of Wayside.

15.     The City Manager is required to file and report on the application to the Zoning Commission. *See City Code §31.1301.* The Zoning Commission has no discretion in making its recommendation to the City Council according to the City Code. The Zoning Commission's purpose is to ensure that the intent of a SUP is met. SUPs are intended to ensure, through

5

appropriate conditions, that the proposed use will meet the conditions set out in Section §31.1301 of the Castle Hills City Code. SUPs are intended to ensure that the proposed use will meet the conditions set out in Castle Hills City Code §31.1301. Waysides SUP application met all applicable conditions and the Zoning Commission violated Castle Hills City Code §31.1301 by denying Wayside its recommendation. Wayside has followed to the letter the terms prescribed in the statute for obtaining a SUP yet was still denied its permit.

16.     Further, there are two contradictory City Ordinances at issue in this case. The first, is the above outlined Castle Hills Zoning Code §31.401, which allows churches as a permitted use in "A" single family districts so long as a special use permit is approved by the City Council. See attached Exhibit D. The other is Castle Hills Code Ordinances No. 50-497 which allows certain enumerated entities to apply for SUPs but expressly disallows churches from being able to apply for SUPs in "A" districts even though similar non-religious entities may apply for SUPS in "A" districts. See attached Exhibit E (ordinance allows government use, private country club use, school and day nursery use and expressly prevents religious institutions from being able to apply for SUPs). The contradictory ordinances were both in effect back in 2011 when the initial SUP was granted to Plaintiff.

17.     On May 07, 2019 the Castle Hills Zoning Commission met and held a public hearing regarding Wayside's requested amendment to its SUP. During the discussion, Commissioner Jana Baker suggested that the permit should be denied based on Castle Hills Code of Ordinance 50-497 which doesn't allow churches to apply for SUPs in "A" Districts. *See https://video.ibm.com/channel/the-city-of-castle-hills Castle Hills Zoning Commission May 07 Meeting*. Responding to Commissioner Baker's argument, City Attorney Mark Schnall advised the Zoning Commission that Code Ordinance 50-497 violated 42 U.S.C. §2000cc et seq. or the Federal

6

Religious Land Use and Institutionalized Persons Act ("RLUIPA") as it treated religious institutions less favorably than non-religious institutions and that Wayside's SUP should be recommended for approval. *See https://video.ibm.com/channel/the-city-of-castle-hills Castle Hills Zoning Commission May 07 Meeting*. After further discussion and heeding advice from their counsel, the Zoning Commission decided to recommend that the City Council approve Wayside's SUP. *See https://video.ibm.com/channel/the-city-of-castle-hills Castle Hills Zoning Commission May 07 Meeting.* The recommendation triggered the need for a simple majority vote at City Council.

18.     On August 13, 2019 the Castle Hills City Council met and Wayside's SUP amendment application was set on its agenda. During the discussion, a city council member noticed that the City Council had incorrectly typed the street address of the 113 Ivywood property on the agenda. Based on its own clerical error, the City Council voted to send Wayside's SUP issue back to the Zoning Commission. The reasoning was that since the street address was incorrect on the City Council's agenda the Zoning Commission must not have known what property was being referred to. This action was taken on the above reasoning even though: (i) the address was correct on Wayside's application, (ii) the address was correct on the May 07, 2019 Zoning Commission's agenda, (iii) the legal description of the property was correct on the City Council's agenda and (iv) City Attorney Mark Schanll said that the legal description clearly identified the property and made the incorrect street address issue moot.

19.     Wayside's SUP was placed back on the Zoning Commission's agenda and wasn't heard until the October 03, 2019 Zoning Commission meeting. At the meeting Wayside's counsel made a presentation to the Zoning Commission explaining the law and that Wayside was being substantially burdened by not being able to use its property and recommended that the City approve

the SUP. During discussion, the newly elected Zoning Commission Chairman Rodriguez cherry picked excerpts from the *Castle Hills First Baptist Church* case, misrepresenting that the City had won the case and that state and local governments did not have to apply RLUIPA. *See https://video.ibm.com/channel/the-city-of-castle-hills Castle Hills Zoning Commission Oct. 03 Meeting*; *Castle Hills First Baptist Church v. City of Castle Hills*, No. SA-01-CA-1149-RF, 2004 WL 546792, at \*17 (W.D. Tex. Mar. 17, 2004). Using Chairman Rodriguez's misrepresentations of the court's ruling and Commissioner Jana Baker's arguments that Plaintiff should have applied for an entirely new SUP[1], the Zoning Commission **voted to not recommend approval** of Wayside's SUP to the City Council.

20.     Further, Chairman of the Zoning Commission Rodriguez violated Local Government Code §171.004[2]. Chairman Rodriguez made arguments opposing Plaintiff's SUP in his official capacity and voted. To Wayside's knowledge Chairman Rodriguez did not file the requisite affidavit. Additionally, the potential for the property value of Chairman Rodriguez's home to be affected by changes on the Original Properties and the 113 Ivywood property is reasonably foreseeable and different from the effect those same changes would have on the public. To comply with Local Government Code §171.004 Chairman Rodriguez was compelled to recuse himself from participating in his official capacity due to his conflict of interest. Chairman Rodriguez not only participated in the discussion before the Zoning Commission as Chairman of

---

1  Despite the fact that an amendment had previously been used to add property to a SUP. See Exhibit B (adding Tract 2A, Tract-3A and Tract-4A via amendment).

2  Local Government Code §171.004 requires public officials with a substantial interest in real property to file an affidavit stating the nature and extent of their interest before a vote or decision on any matter involving the real property. Chairman Rodriguez's home constitutes a substantial interest in real property because he owns it and it has a value greater than $2,500 and it is within 500 feet of the Original and Ivywood Properties. Hence he was requires to file an affidavit prior to voting or deciding on any matter that would affect his property.

8

the Zoning Commission Board, he also voted at the Zoning Commission hearing and then appeared at the City Council hearing, in his official capacity, to oppose Wayside's SUP. Chairman Rodriguez's conduct was in blatant disregard and contravention of the law. *See Local Government Code* §171.004.

21.     The October 03 Zoning Commission Meeting resulted in the Zoning Commission not giving its recommendation for approval of Wayside's SUP. Thus Wayside needed a super majority vote of the City Council at the October 8, 2019 meeting. The City Council heard Wayside's counsel's presentation and also heard from City Attorney Paul Fletcher, standing in for Mark Schnall. Wayside's counsel once again explained to the City Council that the church was being substantially burdened in its religious exercise by not being able to use 113 Ivywood, a property that it owns and needs for the religious exercise of its parishioners. The City's Attorney was asked how the SUP amendment could be approved, and he stated that the zoning codes and ordinances allowed the church to apply for a special use permit and for one to the be granted; further he stated that due to the circumstances[3] this particular permit should be granted. *See https://video.ibm.com/channel/the-city-of-castle-hills Castle Hills Zoning Commission Oct. 03 Meeting*.

22.     The City Council voted 3 for approval, 1 against approval and 1 abstention so Plaintiff did not reach the super-majority required for approval of its SUP. Wayside continues to be substantially burdened by being unable to use property it owns as a result of Defendant's violations of both state and federal laws.

---

3 Attorney Paul Fletcher echoed Mark Schnall's prior statement that the fact that this property is completely surrounded by property owned by Plaintiff and already part of a SUP gives Plaintiff a special circumstance for being granted the SUP.

<u>Inability to Use 113 Ivywood Property is a Substantial Burden</u>

23.     Wayside requires more building space to accommodate its religious needs. Plaintiff cannot currently adequately accommodate its religious needs; more space is required to accommodate its bible study classes and other religious education and religious exercise activities. Currently, the 113 Ivywood Property, surrounded by property owned by Wayside and already part of a SUP, is available to fulfill this need. However, pursuant to Defendant's Zoning Commission and City Council's illegal actions, Wayside cannot use property it currently owns for religious exercise.

24.     The denial of the SUP requires Wayside to (i) forgo religious education that would take place in the 113 Ivywood Property, (ii) it prevents church members from entering the 113 Ivywood Property and conducting worship or prayer services, and (iii) it precludes Plaintiff from running religious programs and meetings in the 113 Ivywood Property. The denial of the SUP bars the use of the 113 Ivywood Property from Plaintiff's use because they cannot conduct any religious activity on the 113 Ivywood Property. Therefore, this denial is a substantial burden.

<u>History of the City of Castle Hills' Discrimination</u>

25.     The City of Castle Hills has a history of making it difficult for churches to operate. For example, in the 1970s Pastor John Hagee and Cornerstone Church were forced to relocate due to the City's land use laws and their application; Pastor Hagee was told that the City of Castle Hills did not need any "mega-churches." In 1997 the City bought Castle Hills United Pentecostal's property after delaying and denying its applications and City Hall is now located where the Pentecostal church once stood. Finally, the City engaged in costly litigation with Castle Hills First

Baptist Church in 2002 regarding the City's refusal to issue a special use permit for the Baptist church to use the fourth floor of a building it owned. The City now seeks to unreasonably limit Plaintiff's use of a property it owns, that is surrounded by property that it owns.

Reapplication Futile

26.     It is clear that any attempts by Wayside to reapply for the desired SUP would be futile. The denial of the SUP forces Wayside to wait six months before even being able to reapply. *See Castle Hills Code of Ordinances §50-622*. There is no variance that Wayside can request nor other form of approval from the City in lieu of a special use permit. Wayside has followed all the rules and provided the City with everything it has requested. The application for the SUP has been in process for several months as it was ping ponged back and forth between zoning and city council and delayed on agendas. During this period Wayside has expended many resources on negotiating and attempting to obtain the SUP. Wayside hired legal counsel to provide the City with informative presentations regarding its substantial burden and laws regarding denial of the SUP. All was to no avail as the City still denied Wayside's SUP.

27.     Hence, further application would be futile as the City has shown it will continue changing its argument to prevent Wayside from obtaining the SUP. Moreover, further application or appeal will result in excessive delay and expense for Plaintiff. As it is, Wayside's application has been delayed for months being pushed back on agendas and being sent back and forth between zoning and city council. Further application or appeal will only lead to uncertainty, expense and excessive delay for Wayside.

28.     Wayside has suffered and continues to suffer injury as a result of the City's unlawful discriminatory actions against it. Wayside is damaged and burdened increasingly each day it is prevented from using its property as set forth herein.

## VII. CAUSES OF ACTION

### Count 1 – Violation of the United States Constitution Free Exercise of Religion: First and Fourteenth Amendments (42 U.S.C. §1983)

29.    Paragraphs 1 through 28 are incorporated by reference as if set forth fully herein.

30.    The City has deprived and continues to deprive Plaintiff of its right to free exercise of religion-as secured by the First Amendment of the Constitution, made applicable to the States by the Fourteenth Amendment-by discriminating against Plaintiff because of its religious character and by inhibiting its right to freely exercise its religious faith by denying the Plaintiff's SUP and thus its ability to freely exercise its religious faith.

### Count 2 – Violation of the Constitution of Texas Religious Freedom: Article I, Section 6

31.    Paragraphs 1 through 30 are incorporated by reference as if set forth fully herein.

32.    The City has substantially burdened Wayside's exercise of religion and deprived and continues to deprive Plaintiff of its right to free exercise of religion-as secured by Article I, Section 6 of the Constitution of Texas-by discriminating against Wayside because of its religious character and by inhibiting its right to freely exercise its religious faith. The sixty-day notice period for declaratory or injunctive relief and associated costs does not apply because the threat to Wayside's free exercise of religion is not only imminent but is already happening as Wayside is currently being prevented from exercising its religion at its 113 Ivywood Property.

### Count 3 - Violation of the United States Constitution Freedom of Speech: First and Fourteenth Amendments (42 U.S.C. §1983)

33.    Paragraphs 1 through 32 are incorporated by reference as if set forth fully herein.

34.    The City has deprived and continues to deprive Wayside of its right to speak on matters of religion-as secured by the First Amendment of the Constitution, made applicable to the

States by the Fourteenth Amendment-by discriminating against Wayside based on the religious nature of its expression and by inhibiting its right to freely express its religious faith to its congregants and the community by denying Wayside the use of its property to accommodate its religious worship, fellowship, education and other activities

### Count 4 - Violation of the Constitution of Texas Freedom of Speech: Article I, Section 8

35.     Paragraphs 1 through 34 are incorporated by reference as if set forth fully herein.

36.     The City has deprived and continues to deprive Wayside of its right to speak on matter of religion as secured by Article I, Section 6 of the Constitution of Texas-by discriminating against Plaintiff based on the religious nature of its expression and by inhibiting its right to freely express its religious faith to its congregants and the community.

### Count 5 - Violation of the United States Constitution Freedom of Association: First and Fourteenth Amendments (42 U.S.C. §1983)

37.     Paragraphs 1 through 36 are incorporated by reference as if set forth fully herein.

38.     The City has deprived and continues to deprive Wayside of its right to freely assemble for religious purposes and/or worship-as secured by the First Amendment of the Constitution, made applicable to the States by the Fourteenth Amendment-by prohibiting Wayside from freely associating for purposes of religious exercise.

### Count 6 - Violation of the United States Constitution Equal Protection: Fourteenth Amendment (42 U.S.C. §1983)

39.     Paragraphs 1 through 38 are incorporated by reference as if set forth fully herein.

40.     The City has deprived and continues to deprive Wayside of its right to equal protection of the laws-as secured by the First Amendment of the Constitution, made applicable to the States by the Fourteenth Amendment-by discriminating against the Church in the application

13

of the City Code on the basis of religious status and on the basis of the Church's exercise of a fundamental right.

### Count 7 – Violation of the Constitution of Texas Equal Protection: Article I, Sections 3 and 3a

41.   Paragraphs 1 through 40 are incorporated by reference as if set forth fully herein.

42.   The City has deprived and continues to deprive Wayside of its right to equal protection of the laws-as secured Article I, Sections 3 and 3a of the Constitution of Texas-by discriminating against Wayside in the application of the City Code on the basis of religious status and on the basis of the Wayside's exercise of a fundamental right.

### Count 8 - Violation of the United States Constitution Due Process: Fourteenth Amendment (42 U.S.C. §1983)

43.   Paragraphs 1 through 42 are incorporated by reference as if set forth fully herein.

44.   The City has deprived and continues to deprive Wayside of law-as secured by the Fourteenth Amendment-by denying the Plaintiff use of its property based on an irrational and discriminatory motivation. Furthermore, the City's statutory scheme for granting special use permits is unconstitutionally vague, ambiguous and with contradictory provisions, has been applied so as to deny Wayside a valuable property right: the right to use its property in the best most efficient way. Further the City failed to abide by its own procedures and regulations in denying Wayside's SUP application, thereby denying Wayside the due process guaranteed to Wayside under the Castle Hills City Code.

### Count 9 - Violation of the United States Constitution and the Constitution of Texas Taking Without Just Compensation: Fifth and Fourteenth Amendment (42 U.S.C. §1983) (Article I, Section 17, Texas Constitution)

45.   Paragraphs 1 through 44 are incorporated by reference as if set forth fully herein.

46.     The City's actions in arbitrarily and capriciously denying Wayside's SUP and/or proceeding under its vague and ambiguous code scheme as set forth above constitute a taking of Wayside's property without adequate or just compensation, in violation of the Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, and Article I, Section 17 of the Texas Constitution. The City's actions are a regulatory taking because:

  i. Wayside has a vested property right in the 113 Ivywood Property;

  ii. The City has intentionally denied Wayside's SUP application;

  iii. The denial of Wayside's SUP proximately caused Wayside to lose all economically beneficial or productive use of the 113 Ivywood Property and unreasonably interferes with Wayside's reasonable and distinct investment-backed expectations to use the 113 Ivywood Property.

**Count 10 – Violation of the Religious Land Use and Institutionalized Persons Act of 2000
Discrimination on the Basis of Religion (42 U.S.C. §2000cc et seq.)**

47.     Paragraphs 1 through 46 are incorporated by reference as if set forth fully herein.

48.     The City has deprived and continues to deprive Wayside of its right to be free from religious discrimination-as secured by the Religious Land Use and Institutionalized Persons Act of 2000, 42, U.S.C. § 2000cc et seq.-by imposing and implementing a land use regulation that discriminates against it on the basis of religion and allows similar secular organizations to apply for and obtain SUPs.

**Count 11 – Violation of the Religious Land Use and Institutionalized Persons Act of 2000
Substantial Burden on Religious Exercise (42 U.S.C. §2000cc et seq.)**

49.     Paragraphs 1 through 48 are incorporated by reference as if set forth fully herein.

50.     The City has deprived and continues to deprive Wayside of its right to freely

exercise its religion-as secured by the Religious Land Use and Institutionalized Persons Act of 200, 42 U.S.C. §2000cc et seq.-by imposing and implementing a land use regulation that permits the government to make *individualized assessments* of the proposed uses for the property involved that imposes a substantial burden on Wayside's religious exercise without further a compelling governmental interest by the least restrictive means.

51.     The City is violating RLUIPA 42 U.S.C. §2000cc(a) and imposing a substantial burden on Wayside by:

    i.  Imposing a land-use regulation that substantially burdens Wayside's religious exercise by making the use of its real property effectively impracticable.

    ii.  Having no compelling government interest being furthered by least restrictive means by its denial of Wayside's SUP.

    iii.  Refusing to accept and consider Wayside's special use permit application related to the occupancy of already existing facilities.

    iv.  Entirely precluding Wayside from seeking a permit needed for religious use of an existing property and facility

    v.  Denying Wayside physical access to its community of worship.

**Count 12 – Violation of the Religious Land Use and Institutionalized Persons Act of 2000 Limitations and Exclusions (42 U.S.C. §2000cc et seq.)**

52.     Paragraphs 1 through 51 are incorporated by reference as if set forth fully herein.

53.     The City has deprived and continues to deprive Wayside of its right to free exercise of religion-as secured by the Religious Land Use and Institutionalized Persons Act of 200, 42 U.S.C. §2000cc et seq.-by imposing and implementing a land use regulation that unreasonably

limits religious assemblies within the City of Castle Hills; preventing Wayside from even applying for a SUP on the criteria that it is a religious institution.

### Count 13 – Violation of the Religious Land Use and Institutionalized Persons Act of 2000 Equal Terms Provision on Religious Exercise (42 U.S.C. §2000cc et seq.)

54.     Paragraphs 1 through 53 are incorporated by reference as if set forth fully herein.

55.     The City has deprived and continues to deprive Wayside of its right to free exercise of religion-as secured by the Religious Land Use and Institutionalized Persons Act of 200, 42 U.S.C. §2000cc et seq.-by imposing and implementing a land use regulation that treats Wayside on less than equal terms with nonreligious assemblies or institutions.

56.     The City is violating RLUIPA 42 U.S.C. §2000cc(b)(1) and treating Wayside on less than equal terms by:

      i.     Allowing nonreligious country clubs to apply for SUPs but denying that right to Wayside;

      ii.     Allowing day cares to apply for SUPs but denying that right to Wayside.

57.     Castle Hills Code of Ordinance 50-497 is a facially discriminatory in application because it excludes Wayside's place of worship where secular assemblies are permitted.

### Count 14 – Violation of the Texas Religious Freedom Restoration Act (Tex. Civ. Prac. & Rem. Code Ann. §110.001 et seq.)

58.     Paragraphs 1 through 57 are incorporated by reference as if set forth fully herein.

59.     The City has deprived and continues to deprive Wayside of its right to free exercise of religion-as secured by the Texas Religious Freedom Restoration Act, Tex. Civ. Prac. & Rem. Code Ann. §110.001 et seq.-by imposing and implementing a land use regulation that imposes a substantial burden on Wayside's religious exercise preventing Wayside from using existing property that it owns for much needed religious fellowship.

17

## Count 15 – Federal Declaratory Judgment

60.     Paragraphs 1 through 59 are incorporated by reference as if set forth fully herein.

61.     There exists a genuine controversy between the parties herein that would be terminated by the granting of declaratory judgment declaring Castle Hills Ordinance 50-497 is illegal under RLUIPA's Equal Terms provision and harmonizing Castle Hills Ordinance 50-497 with Castle Hills Zoning Code §31.401 so that Plaintiff's SUP may be granted. The Court should declare and find:

    i.    that the denial of the Plaintiff's special use permit applications was arbitrary, capricious and an abuse of municipal discretion;

    ii.   the denial of the Plaintiff's special use permit applications violated the Plaintiff's constitutional rights of substantive due process, procedural due process, and freedom of religion, speech, and association;

    iii.  the Plaintiff's special use permit applications should have been granted and that the Plaintiff is entitled to use the 113 Ivywood Property for religious exercise as requested;

    iv.   that City of Castle Hills Code of Ordinances §50-497 is in violation of the Equal Terms provision of RLUIPA and declare that Castle Hills Zoning Code §31.401 governs the SUP application process; and

    v.    that the City grant Wayside's SUP.

## Count 16 – Abuse of Municipal Discretion

62.     Paragraphs 1 through 61 are incorporated by reference as if set forth fully herein.

63.     The City's denial of Wayside's requests for a SUP was in violation of state law because the City's actions are arbitrary, capricious, unreasonable, and a clear abuse of the City's

18

power. There is no viable legitimate governmental interest or purpose that is forwarded by the denial of the SUP nor has the City alleged one. The denial of the SUP was arbitrary, unjust, and unduly burdensome to Wayside. Accordingly the denial of the permit applications was a clear abuse of municipal discretion.

## Count 17 – Violation of Local Government Code 171.003 by Chairman Rodriguez

64.     Paragraphs 1 through 63 are incorporated by reference as if set forth fully herein.

65.     City of Castle Hills Chairman of the Zoning Commission Defendant, Joseph Michael Rodriguez violated Local Government Code 171.003 by:

     i.    Not filing the requisite affidavit, as he had a substantial interest in real property affected by the SUP;

     ii.    Not recusing himself from participating in the vote and discussion of Plaintiff's SUP; and

     iii.    As a direct and proximate result of Defendant Rodriguez's actions, Plaintiff was harmed and deprived of its rightful use of its property.

## VIII.
## ATTORNEY FEES

74.     As a result of Defendants' actions denying Plaintiff's SUP and its refusal to comply with the United States and Texas Constitutions, the federal Religious Land Use and Institutionalized Persons Act of 2000 and the Texas Religious Freedom Restoration Act, Plaintiff had to hire Farrimond, Castillo & Bresnahan, P.C. to defend its religious liberties. Therefore, Plaintiff is entitled to and seeks reimbursement for its reasonable and necessary attorney fees under 42 U.S. Code §1988(b) and under its request for federal declaratory judgment, even if only declaratory relief is sought, as the underlying statute allows for attorney's fees.

## IX.
## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiff, WAYSIDE CHAPEL EVANGELICAL FREE CHURCH, respectfully requests DEFENDANT, CITY OF CASTLE HILLS and JOSEPH MICHAEL RODRIGUEZ, be cited to appear and answer herein, and that on final hearing the Plaintiffs have judgment against the DEFENDANTS and the Court:

      a.     declare and find that the denial of the Plaintiff's special use permit applications was arbitrary, capricious and an abuse of municipal discretion;

      b.     declare and find that the denial of the Plaintiff's special use permit applications violated the Plaintiff's constitutional rights of substantive due process, procedural due process, and freedom of religion, speech, and association;

      c.     declare and find that the Plaintiff's special use permit applications should have been granted and that the Plaintiff is entitled to use the 113 Ivywood Property for religious exercise as requested;

      d.     declare and find that City of Castle Hills Code of Ordinances §50-497 is in violation of the Equal Terms provision of RLUIPA and declare that Castle Hills Zoning Code §31.401 governs the SUP application process;

      e.     declare that Wayside's SUP application is approved and that Defendant grant Wayside's SUP;

      f.     declare that Defendant pay Plaintiff's reasonable and necessary attorney fees and costs; and

      g.     All other relief, in law and in equity, to which Plaintiffs may be entitled.

Respectfully submitted,

**FARRIMOND, CASTILLO & BRESNAHAN**
130 E. Travis St., Suite 350
San Antonio, Texas 78205
Telephone: (210) 231-0919
Telecopier: (210) 231-0004


By:/s/ Roger G. Bresnahan
    Roger G. Bresnahan, Lead Counsel
    State Bar No. 02959460
    Email rbresnahan@fcbtxlaw.com
    A. Federico Longoria, III
    State Bar No. 24002492
    Email afthird@hotmail.com
**ATTORNEYS FOR PLAINTIFF**

**Certificate of Service**

I certify that a on the 26th day of November 2019, I have served a true and correct copy of the foregoing pleading to the following offices.

United States Department of Justice
US Attorney's Office
601 NW Loop 410, Suite 600
San Antonio, Texas 78216

Texas Attorney General
Office of the Attorney General
PO Box 12548
Austin, Texas 78711-2548

By: /s/ Roger G. Bresnahan
         Roger G. Bresnahan